516 A.2d 778

In Re: Nomination Petition of Roxanne H. Jones for Nomination of the Democratic Party for Senator in the Pennsylvania General Assembly from the Third Senatorial District.

Heard February 13, 1984, by Judge ROGERS.

*Lee C. Swartz, Hepford, Swartz, Menaker & Morgan,* for petitioner.

*Harold R. Berk,* for respondent.

OPINION BY JUDGE ROGERS, February 22, 1984:
T. Milton Street, the incumbent State Senator representing the Third Senatorial District of Pennsylvania and a candidate for nomination of the Democratic Party for a new term in that office, and others, have filed objections to the nomination petition of Roxanne H. Jones for the nomination of the Democratic Party to the same office.

The objectors raise two questions. The first is that the Candidate's Affidavit executed and sworn to by Roxanne H. Jones on January 15, 1984 states that she had filed a Statement of Financial Interest for the preceding calendar year with the State Ethics Commission as required by Section 4(b) of the State Ethics Act, 65 P.S. §404(b), when in fact there was no such Statement on file with the Ethics Commission on January 15, 1984. The objectors contend that this circumstance should effect the invalidation of her nomination petition. However, on January 30, 1984, Ms. Jones did file with the State Ethics Commission a Statement of Financial Interest for the preceding calendar year and later the same day filed her nomination petition with

the Candidate's Affidavit complained of attached with the State Bureau of Elections. We overrule this objection on the controlling authority of *State Ethics Commission v. Baldwin,* 498 Pa. 255, 445 A.2d 1208 (1982), holding that in the absence of a deliberate attempt to falsify the Candidate's Affidavit, the failure of candidates to file Statements of Financial Interest with the State Ethics Commission before filing nomination petitions does not fatally taint the filing process so as to invalidate the nomination petitions and the Candidate's Affidavits containing attestations that the Statement of Financial Interests had been previously filed. There is no evidence here that there was a deliberate attempt to falsify the Candidate's Affidavit with respect to the Statement of Financial Interest. Indeed, here the Statement of Financial Interest was filed with the Ethics Commission before the nomination petition, with the Candidate's Affidavit, was filed with the Bureau of Elections. In the *Baldwin* case the Statements of Financial Interests were not filed with the Ethics Commission until after the nomination petitions had been filed with the Bureau of Elections.

The objectors' second challenge to Ms. Jones' nomination petition is to the effect that Ms. Jones is not qualified to be Senator for the Third Senatorial District because she will not have been an inhabitant of the Third Senatorial District for one year next before the General Election to be held November 6, 1984, as required by the provision of Article 2, Section 5, of the Constitution of Pennsylvania. We will sustain this objection.

The General Election day in the year 1984 is November 6. It is undisputed on this record that Ms. Jones established a domicile for her and her then minor daughter at 845 North 7th Street, Philadelphia in the year 1970 and that she remained domiciled at that location until the events of this case. Eight Hundred Forty-

five North 7th Street is not in the Third Senatorial District.

Ms. Jones contends, however, that she moved her domicile to 1714 North Bambrey Street, Philadelphia, which is in the Third Senatorial District, on October 15, 1983.

After hearing, we make the following findings of fact:

(1) Roxanne H. Jones and her daughter Wanda, who is now twenty-two years of age, established a domicile at Apartment 5C, a two-bedroom apartment in the Marshall Court Apartments located at 845 North 7th Street, Philadelphia, Pennsylvania in the year 1970.

(2) Marshall Court apartment house is owned by the Philadelphia Housing Development Corporation. It is subsidized housing provided under the aegis of the Philadelphia Housing Authority.

(3) As of December, 1983 the contract rent for the two bedroom apartment occupied by Ms. Jones, as tenant, and her daughter as a member of her household, was $265 of which the Philadelphia Housing Authority paid $221 and Ms. Jones $44.

(4) The required annual redetermination process required by Philadelphia Housing Authority of Ms. Jones' status as the tenant of the North 7th Street apartment began October 7, 1983. At that time Ms. Jones certified that she lived at the North 7th Street address.

(5) On or about November 1, 1983, still in pursuance of the redetermination process, Ms. Jones filed an application for the renewal of the tenancy at North 7th Street. On the application she twice recorded that she resided in the apartment at 845 North 7th Street.

(6) The application just mentioned was to continue as a tenant of Apartment 5C at 845 North 7th Street for one year beginning February 11, 1984.

(7) The regulations of the Philadelphia Housing Authority provide that one vacating a subsidized facility

must give thirty days' advance notice; no such notice has ever been received by the Authority from Ms. Jones.

(8) Daughter Wanda's occupancy of the apartment on North 7th Street is irregular if her mother is not also living there because the Housing Authority's rule is that one person may not have a two bedroom apartment. Not only had Ms. Jones given the housing authorities no notice of Ms. Jones' departure, no redetermination has been asked for or instituted in Wanda's behalf, which would be required for her continued sole occupancy of this or any other unit of Marshall Court.

(9) As a culmination of the redetermination process begun in October, 1983 and the application made in November, 1983, Ms. Jones received in January, 1984, a one year's lease as from February, 1984 for Apartment 5C at Marshall Court, 845 North 7th Street apartment.

(10) Ms. Jones paid her required share of the rent for the North 7th Street apartment for January, 1984.

(11) Food stamps were sent to Ms. Jones monthly through January, 1984 to the North 7th Street address.

(12) Ms. Jones' medical cards were sent to her by the assistance authorities to the North 7th Street address each month through January, 1984.

(13) The telephone at the North 7th Street apartment is in the name of Roxanne H. Jones and the last bill was sent to her at the North 7th Street address on January 25, 1984.

(14) As of the date of our hearing, February 13, 1984, Ms. Jones had not changed her mailing address from the North 7th Street address. Her mail still goes to that address.

(15) Ms. Jones' address with the public assistance authorities was never changed from 845 North 7th Street.

(16) Ms. Jones voted on November 8, 1983 from the polling place appropriate for her North 7th Street

address. On January 18, 1984, she changed her address with the registration commission from 845 North 7th Street to 1714 North Bambrey Street. On the notice of change Ms. Jones said that she had moved to Bambrey Street in September, 1983. October 8, 1983 was the last day prior to the election on November 8, 1983 for changing one's address for registration purposes. Only persons who moved after October 8, 1983 were eligible to vote at their former election district on November 8, 1983, despite which, as noted, Ms. Jones voted from her North 7th Street address at that election.

(17) On October 15, 1983, Ms. Jones moved some of her clothes and "papers" from 845 North 7th Street to a room in the residence of William Ervin, Sr., at 1714 North Bambrey Street.

Ms. Jones testified that on October 15, 1983 she moved from 845 North 7th Street to 1714 North Bambrey Street, the address of William Ervin, Sr., a friend, who had proposed marriage to her and whose proposal she still has under consideration. She testified that she occupies a bedroom in Mr. Ervin's home. We have found in this regard only that Ms. Jones has moved some clothes and papers to 1714 North Bambrey Street because that is the only fact of this aspect of the case advanced by Ms. Jones which we firmly believe.

Article 2, Section 5 of the Constitution of Pennsylvania provides that Senators "shall have been citizens and inhabitants of the State four years, and inhabitants of their respective districts one year next before their election (unless absent on the public business of the United States or of this State, and shall reside in their respective districts during their term of service)." A leading Pennsylvania case concerning the meanings and effect of the words inhabitant (habitation) and reside (residence) as used in Article 2, Section 5, is *Lesker Case,* 377 Pa. 411, 105 A.2d 376 (1954). There it was held, on

abundant earlier authority, (1) that one's inhabitance or residence is one's domicile; (2) that one's domicile is one's permanent home establishment, one's fixed, permanent, home to which one always intends to return; (3) that "to accomplish a change of domicile there must be not only the *animus* to change but the *factum* as well" and (4) that "there must be the intention to remain" at the new domicile.

It is also the law (5) that a domicile once acquired is presumed to continue until it is shown to have been changed; (6) that the burden of proving a change of domicile rests on the person making the allegation of a change; and (7) that the mere absence from the fixed home or domicile will not effect a change of domicile. *See Loudenslager Will*, 430 Pa. 33, 240 A.2d 477 (1968).

The application of the facts we have found to the principles of law just restated, leads ineluctably to the conclusion that Ms. Jones was not domiciled in the Third Senatorial District on or before November 6, 1983. Ms. Jones had the burden of proving that she changed her domicile from the apartment on North 7th Street to the room in Mr. Ervin's house on Bambrey Street on October 15, 1983, as she asserted or some other time before November 6, 1983. The facts belie either an actual or intended change of domicile. Her daughter remained at North 7th Street, her mailing address and telephone number were not changed, and during October, November and December, 1983, and January, 1984, she repeatedly reported to officials of the Philadelphia Housing Authority that she lived in the apartment at North 7th Street and that she would continue to live there during the year 1984. She voted from the North 7th Street address at the Municipal Election in 1983, on November 8, 1983; and in December, 1983 or January, 1984, she accepted a lease for Apartment 5C, Marshall Court, 845 North 7th Street for one year to commence in February, 1984.

110

Indeed, the facts demonstrate at best for Ms. Jones that she may recently at times have been absent from her domicile on North 7th Street; but as we have seen, mere absence will not effect a change of domicile. Ms. Jones admits visiting and spending the night with her daughter at North 7th Street; and she has no firm plans to marry Mr. Ervin whose proposal of marriage she says was the reason why she moved into a bedroom in his house in the Third Senatorial District.

Being convinced that Ms. Jones is still domiciled at apartment 5C, Marshall Court, 845 North 7th Street, a location not in the Third Senatorial District, we are constrained to enter the following:

ORDER

AND NOW, this 22nd day of February, 1984, the nomination petition of Roxanne H. Jones, Democratic candidate for Senator in the General Assembly from the Third Senatorial District in Philadelphia County, is hereby set aside. The prothonotary is directed to notify forthwith the parties hereto, or their counsel, of this Order and also to certify and forward a copy hereof to the Secretary of the Commonwealth of Pennsylvania.